We need the attorneys for the second case, the Losch case, to come on board and turn on their videos. Okay. All right, good morning. Our second case is number 20-10695, Henry Losch v. Experian Information Solutions, Incorporated. Ms. Rodkiss. May it please the court. My name is Susie Rodkiss, and I'm appearing on behalf of Henry John Losch, who's the appellate in this case. He appeals the decision of the district court to grant summary judgment in favor of Experian on his Fair Credit Reporting Act claims that Experian failed to use reasonable procedures to assure the maximum possible accuracy of his information contained in his consumer report. And that when he brought this inaccuracy to Experian's attention, they failed to conduct a reasonable reinvestigation of his dispute. While we were awaiting oral argument in this case, and after all the briefs were in, the court directed the parties to submit simultaneous supplemental briefing on standing. And the court asked us to address whether Mr. Losch has standing to even sustain this suit. And the court asked us to look at it in terms of the Supreme Court's decision under Spokio v. Robbins, and this court's subsequent decisions in Trittle v. standing in order to obtain relief is a threshold issue. It's raised for the first time here on appeal, but I think that we have a sufficient record to demonstrate that Mr. Losch has standing to pursue his claim and to reverse the district court and to restore the case to its trial track. I speak only for myself. I think our Pedro case from 2017 supports your argument on standing because, in this case, the evidence viewed in the light most favorable to Mr. Losch was that the allegedly incorrect information about the mortgage debt was reported to a third party and therefore affected or likely could have affected his credit standing or his ability to get credit. So at least for me, I think standing is not a problem for you in this particular case. But tell me about how it is that Mr. Losch's one paragraph complaint to the agency triggers more of an obligation. I mean, if I'm trying to think about it in sort of the way that judges react to filings, Mr. Losch makes a conclusory statement saying, this debt was discharged in bankruptcy. I no longer owe that debt. And then you've got the furnisher saying, no, the information is correct. And so at that point, what is an entity like experience supposed to do? I think there would be a different case if Mr. Losch or someone in his position would have said, here's a copy of the discharge order, or here's a copy of the case number, and here's a copy of the docket entry, whatever. And it's a very simple thing for experience to figure out whether or not that information is correct or not. But here, you've got a one paragraph statement without any much detail, and you've got a response without much detail either. So what do we do about someone like experience in that circumstance? Thank you, Your Honor. The FCRA is a remedial statute. It is designed to protect consumers. It's designed to enable them to correct inaccurate information that appears in their consumer report. There's no standard like there is in the FDCPA of the least sophisticated consumer. But Experian and NationStar have a relationship with each other. They trade in consumer data. They have developed the system by which this consumer data is monetized. They make money and profit from the trade and consumer data. You asked the question, how is Experian supposed to know what Mr. Losch is disputing through his one paragraph without any evidence? A consumer is not expected to do anything other than apprise the consumer reporting agency of the nature of the dispute, the inaccurate information. And in this case, Experian already had and was reporting the bankruptcy. It receives bankruptcy information and it reported bankruptcy information about Mr. Losch. The evidence also shows that Experian never conducts a reinvestigation, regardless of what it said in Mr. Losch's dispute. They simply forwarded on to NationStar. And thus, in this kind of closed information loop, there is not an opportunity for Experian that has an independent reinvestigation obligation to correct its inaccurate reporting, unless the very source of that inaccurate reporting, NationStar, does something to change it. How much crawling around in the bankruptcy court docket and or orders does Experian have to do? I mean, I've looked at the discharge order and maybe I just don't understand discharge orders, but I just don't see a clear reference to mortgage there. It doesn't seem like it's on the face of the document. Maybe you can correct me if I'm wrong about that, but I guess I just worry a little bit that are you asking us to require Experian to parse, I don't know, sort of inkblot-ish bankruptcy orders? That's a great question, Judge, and there's a couple things I'd like to say about that. First of all, no, we are not asking Experian to go dig around behind records, but if they are going to be reporting bankruptcies, if they're going to be reporting trade lines that have been discharged, you have to remember this was a Chapter 7 discharge. And in Chapter 7, all of the debts are included in the discharge unless reaffirmed. In Mr. Losch's dispute, he explained that he originally reaffirmed it, he moved for rescission of the reaffirmation, it was ordered, and thus his account was discharged. If Experian thinks it's too difficult, or it doesn't have time, or it doesn't make monetary sense for it to crawl around and look at the actual orders, then the FCRA has an answer for that. And that is, if Experian can't verify the information, it must delete it promptly. What should Experian have done here? Expressly, what should it have done, and what would it have found out if it did it? Thank you, Judge. The standard here is that Experian conduct a reasonable reinvestigation, and that's a jury question. Specifically, what should it have done, and what would it have found out? So, if Experian could not, if it had ever looked at the bankruptcy record, which it did not, it could have... What should it have done, and what would it have found out? If it could not verify the... No, no, what should it have done specifically, the act? It should have reinvestigated Mr. Losch's dispute by looking either at the bankruptcy record, and if it found that that was not viable, it should have promptly deleted that account. Then what should it have done after that? Promptly deleted the account, or corrected it to reflect that it was discharged in bankruptcy. Counsel, two-minute warning. So, just so I'm clear, following up on Judge Choklat, following up on me, I mean, is your answer to Judge Choklat, the simple answer, they should have looked at the discharge order? And then, in follow-up to Judge Choklat's question, had they looked at it like I looked at it, what would they have found? I just can't tell. I'm looking at this thing, and I just can't tell. I understand, Judge. If they look, if the discharge order is incapable of being deciphered by experience, the FCRA provides instructions. If it cannot verify the debt, it has to delete it promptly. It absolutely should have conducted a reinvestigation that would have enabled it to either confirm that that debt was reporting accurately, which we know it wasn't, looking at a Chapter 7 discharge, knowing that all debts are included in a Chapter 7 discharge unless reaffirmed, and also, if it could not decipher it, its obligation under the FCRA 1681 IA-5 is to promptly delete the account. But in this case, you have not just a general discharge order, but you've got an additional order with regards to the withdrawal of the reaffirmation. So, to go back to the questions of my two colleagues, how far into the docket she does, or the orders, does Experian have to go? There's no rule about how far it has to go, Your Honor. It has to conduct a reasonable reinvestigation. Well, in this case, what should it have, to go back to Judge Choflat's question, let's say it goes to the discharge order, and it looks at the docket and it sees that Mr. Loesch has reaffirmed the mortgage. Does it need to keep going to see if there's another order in which he has withdrawn the reaffirmation of the mortgage and now wants to have rescission? If it wants to report it as absolutely accurate, Judge, may I continue to respond to your question? Of course. If it wants to comply with the FCRA's requirement that it report maximal accuracy, there's no requirement that Experian report any of these items. And if it cannot verify the accuracy of the item it's reporting, it must delete it. I understand that the court wants me to describe the procedure that Experian should be going through. Right, we do, because we have to write an opinion, not just for you and for Mr. Wires and your clients in this case, but one that goes forward. And so, you're saying that Experian at the very least had to go look at the bankruptcy docket, right? If it did not want to go look at the bank, no, I'm not saying that look at the bankruptcy docket, because the docket is not the bankruptcy record. And Experian didn't do any of that. It has no procedure to do any of that. So it had to look at the bankruptcy record, the underlying orders and filings? If it wants to ensure the maximum possible accuracy of the information it's reporting about Mr. Loesch, yes. If it does not want to, sorry, Judge. No, no, go ahead, please. If it does not want to ensure the maximum possible accuracy, and it just wants to continue to obtain bankruptcy records and obtain information directly from furnishers without ever conducting one bit of investigation into whether that information is accurate, that it's going to turn around and report about consumers who've gotten a chapter seven discharge and are entitled to their fresh start, then it shouldn't report that. It should not report that trade line. If it cannot assure its accuracy to the maximum possible extent. All right, Miss Roccas, thank you very much. You've saved your full time for rebuttal. Mr. Wires. Good morning, Your Honor's Adam Weers on behalf of Experian. Sorry for mispronouncing it. You're not the first. I do want to start with standing, notwithstanding Your Honor's statement regarding where you're leaning. And I'd like to distinguish Pedro, because I, I don't think Pedro's dispositive here for a couple reasons. One, Pedro was decided on the pleadings. As Your Honor, Jordan, Judge Jordan noted in your dissent in Moransky, you know the standard is different in the when you're looking at it at the pleadings or at this stage. Now we have a full evidentiary record. What does that record show? Well, it shows no credit denials. And the only evidence in the record about whether or not this went to a third party is that it likely did not. If you look at Ms. Simmons declaration, which is at A375, that's Experian's witness. The only inquiries for Mr. Lash's credit report were soft inquiries, which are not credit applications. Those typically do not include trade line data. So the only evidence in the record is that it did not go to third parties. There is no evidence about credit. But if you, if you, I mean, we're not required to completely ignore common sense, the Supreme Court has told us in Twombly, right? So if you've got a debt of over $100,000 listed on your credit history and account, how can that not be of adverse effect to you as a consumer? Well, it likely is. But the question is, is it more detrimental than having a report is discharged in bankruptcy? And that's not the point. That's not the that's not the standing question, though. That might be a merits question, but it's not a standing question. But the standing question is the question is injury. In fact, if I had a $100,000 plus debt on my credit report, that's adverse to me. That is detrimental. Whether or not I've been denied credit affects my ability to seek credit. It hampers me from seeking credit because I know that people aren't going to give it to me. The question, though, Your Honor, is whether the injury is traceable to Experian's conduct. That's OK. That's a that's a very different prong of standing. So are you saying that there's no injury here or are you saying there's no traceability or no regressibility? Well, I'm saying there's no injury here. And to the extent there is. And frankly, the only evidence from where I can see where there might be is emotional distress. That's not traceable to Experian if you actually dig down and look at the look at Mr. But Experian reporting the mortgage with a balance and as late. There's no evidence anywhere that that is hurts his credit score as compared to what he thinks it should have been, which is. Did you present any evidence that the two are the same? It's not our burden. It's plaintiff. I'm not I'm not suggesting it's your burden. I'm asking you whether or not you presented any evidence that the two are the same. There's no evidence in the record that one is materially worse than the other. We can both as noted. Why are we supposed to assume that they're both the same? Well, why are we supposed to know what each one is? The point is that you're not and that at this point in the case, the plaintiff's burden is to bring forward evidence to show that the reporting was materially worse. And she hasn't done that. And nor is it. Where is that? Where is that? Where does that come from in terms of Article three standing? And it's materially worse than something else. Because otherwise it doesn't injure her. If the if it's better for her credit, it's not injuring her. That's the so the mortgage is going to be on her credit. So the question is, should it report as discharged, which she thinks it should have, or should it report it with a balance in the late payment? I'm not there's no evidence that one's worse than the other, nor do I think it's it's obvious that one's worse than the other. Discharge and bankruptcy is typically thought of as one of the worst things that can appear on a credit report. So I don't think she's met her burden. She hasn't provided evidence. Can I ask you just a quick question, and I might just be missing something about the record, but I thought that Mr. had testified that the report itself showed that it had been sent to numerous other entities inquiring entities, and that another reporting service had told him that his credit had been adversely affected and that he had been denied credit by three other creditors, by virtue of his, you know, adverse entry on this report. So, so let me take up each of those. So, with regard to the denials. Those are all after it's updated to what he wanted it to report it. So that's out for injury purposes we made the change he said he wanted. With regard to the inquiries. Yes, there are inquiries on his credit report it's described in the Simmons declaration which again is a 375, they're all soft inquiries. So those might be things like someone who you have an account with doesn't account review, they're not looking at your credit report, they're merely looking to confirm that you fall within certain credit parameters, or things like that, or someone's verifying your identity by asking you which of the following addresses have you lived at. It's not a review full credit report typically and there's no evidence here that the nation star account was ever sent to a third party for one, and for to certainly no evidence that anyone cared about. Can I ask you to switch over to. Yes, merits of the district court summary judgment ruling. If you could tell me abstractly what you think an entity like experience has to do, if anything, when it's presented with a conclusory statement by the consumer and a conclusory statement by the version. Well, I think it might vary. But in this case, we have the consumer Mr Lodge saying this was discharged in bankruptcy, I no longer own it. And we have nation star saying, No, this was not discharged in bankruptcy. At that point experience confronted with essentially a legal dispute between Mr Lodge and nation star. One says it was discharged. One says it wasn't. So can I can I just stop you right there just to make sure that we've all got our terminology straight you said at that point, they're confronted with a legal dispute. Why isn't that a factual dispute. Hence, because the, because the question of whether or not it's discharged is not something that is we're in your honors hinted at this in your questioning earlier, it's not something that is, there's not a court order that says this account was discharged. Instead, you have in fact what the discharge order says, which by the way was issued prior to any rescission, the discharge order says that you know you need to consult a lawyer to find out if it's discharged. So, there may be instances where you can tell, but this was not one of them. We had two competing views and experience put in a position where it needs to where apparently plaintiff says it needs to either adjudicate that dispute, or just just delete the trade line. And I want your honors to think about, but you're saying, but you're talking about the order not being clear only after the only with after the fact review, my question is, so you have a conclusory statement by Mr. What if anything, does it have to do. It must conduct a reasonable reinvestigation. And what, what courts have said is typically, it consists of sending an AC TV. Unless something puts experience I noticed that the furniture is unreliable some reason to think we shouldn't rely on its response. There was nothing in this record to suggest we shouldn't be able to rely on nation star point 1.2, and I think it's important that your honors consider this. The 1996 amendments to the SCRA are critically important. The 11th Circuit reference that in the hunt decision. They, they close the loophole they close the gap. Now, we can rely on the furniture to reasonably investigate this because they have legal liability if they get it wrong. So experience does what it can do. And as nation star. There's no reason to think nation star is not going to adequately investigate this, especially since there's legal liability for them. If they get it wrong, which by the way, they pay for here. The system work exactly as Congress intended in 1996 when it passed the amendments, but what's not required is for the response to come back to experience and experience to say, Oh, well, for some reason we think nation star was wrong. There was nothing here. Firstly, there's nothing in this record that would have made us suspect that. And secondly, we, as I noted were presented with a legal dispute, similar to encourage your honors to review the seven certain case in Humphrey consumer says this account student loan was discharged. Not the bankruptcy but discharged because of disability, the furniture says, No, it wasn't discharged, the Seventh Circuit says experience, or the CRA is there, conducted a reasonable reinvestigation. There's not more it can do to resolve this dispute between the two parties. And that's especially true in this case and I think the Kalen cases reference to whether or not it's possible to even unwind factual, you know, find a factual error. This was a bizarre scenario. The reaffirmation agreement is signed. The trustee for reasons that never became clear sells the property out from under Mr lash mortgage trades hands, long after the statutory period that's allowed. He rescinds the discharge order, then rescinds the reaffirmation. It's a crazy set of facts that I think under. I think there's even a question whether nation stars obligated to unwind and under under this course decision and hunt, but there's certainly no reasonable basis to say experience. So let me ask you a quick question about you mentioned Kalen so I mean one of the things among others that Kalen says is that the reasonableness of, you know, a servicers or reporting agencies procedures and a reinvestigation will be a jury question the vast majority of cases, and especially whereas here, we're in this bizarro world that you described I don't disagree with the description. I guess I don't quite understand why this isn't a case that would be better adjudicated by a jury. Because this unique set of circumstances what what should we know sort of faced with this unique set of circumstances, what should experience have done well because, for one thing, their circuits, every other circuit to address it has said experience doesn't isn't required to as a matter of law, resolve legal disputes, which is what experience was faced with. But secondly, Miss rockets is solution which is apparently you should throw up your, your arms and delete it. That is not. That is not an adequate solution experience already overwhelmed with disputes, and if we just delete no discharge order ever gives any clarity. And so, deleting it is not an option here, the complications in the record don't lead one to think it's a jury question at least one minute warning. It leads me to conclude only like that, there is nothing more that could have been done, even had experienced tried to unwind this, there's no reasonable thing that could have been asked of experience here. Your Honors I did want to touch on two other points. Two other bases for granting summary judgment. One is a lack of damages. I think, even if this core were to find standing, there's no damages here. The plaintiff has not demonstrated any other than some conclusory statements about emotional distress, no credit denials, no evidence of their score went down, no evidence that it went to a third party. That is another basis to affirm. And that's why I have a question about that. Yeah, I said, other than some conclusory statements about mental and emotional distress. I'm Judge Jordan knows this a lot better than I do that the first in bank case that we decided after I came on the court was a case called United States versus Stein, which says that there's no reason, per se, that a self serving conclusory affidavit cannot give rise to a genuine issue of material fact. Nobody cited that case here but why doesn't that principle from our own bank decision and Stein defeat your argument about the conclusiveness of the affidavit circuit courts around the country have addressed emotional distress claims in the context of consumer is your point. So you know you'll take Stein, as is, as in bank precedent that binds us but that there's a different rule that applies to emotional distress. Correct. Okay. Without your honors I has expired. To finish up this years. I don't have anything further unless your honors have something further for me. All right, thank you very much. Thank you rockets you've got your rebuttal time. Thank you, Your Honor. I just like to address some of the argument Mr rears is brought forward. First, this court and Hinkle versus Midland credits management's addressed head on, whether the consumer reporting agencies had independent obligation, following the 1996 amendments to the FCR a 1996 amendments to the FCR a added furniture liability for the consumers when they see something on their consumer report that's inaccurate they immediately go to the furniture, but the furniture has no obligation to do an investigation at that point, and no liability attaches unless they send the dispute to the consumer reporting agency, and the consumer reporting agency has had an obligation to conduct a reinvestigation a reasonable reinvestigation, ever since the implementation, the enactment of the consumer credit reporting act. And in Hinkle this court said that the furnishers duty of investigation is part of a larger reinvestigation duties by the CRS. And it always comes back to whether the actual reinvestigation that was done by experience was reasonable, and that determination is a jury question. But, but, you know, you really have not. Well, at least to my satisfaction you haven't explained what experience was supposed to do what what should experience have done. Once it got nation stars statement that the debt was accurately reported, what is it supposed to do that. Okay, well we all agree that all they did was just transmit a couple lines of code to nation star and then merely parrot back what nation star said it should have deleted it. And that's not throwing up your hands. That's instruction from Congress engrossed in the legislation. If you can't verify the account, delete it. The second thing that it could have done is looked at its own records and the information that it gets from LexisNexis when it publishes bankruptcy trade line. I'm sorry bankruptcy status information within the context of the consumer report. The evidence in this case also shows that the dispute. I'm sorry, Miss Miss Rutgers I'm sorry to interrupt, but I think at least on my screen it looks like we might have lost judge Jordan. He froze and then I got Mr weirs but I still see. Yeah, I'm sorry, Valerie, would you stop the clock and let's try to get judge Jordan back. My apologies that the internet here has completely crashed. So I had to get out and come back in, we couldn't reestablish it so I'm at least going to try to hook up by phone for the rest of the argument today so my sincere apologies and Miss rockets you can continue, unless you've already finished, and I missed the argument. Your Honor, I was stopped mid sentence when it became apparent that you were no longer in the, in the call. And so I just want to I was answering the court's question regarding what experience should have done or what it could have done. And I'm not sure where you got cut off or if I need to repeat myself I think you can just look at the record. But what's clear is that a reasonable reinvestigation is a jury in question, and the jury should be entitled to see whether this closed communication loop between experience and its subscriber its customer is a reasonable reinvestigation of the dispute that Mr. sent. Miss rockets Can I ask you a quick question. I mean, sir, you seem to have committed yourself to the position that if experience looked at the bankruptcy record and couldn't tell, then it's only valid option was to delete the line item. I mean, couldn't it also have simply contacted the consumer is that you know it's for more information. Absolutely judge and you have just preempted but I was going to say next, if experience found, which it never really argued that it found that Mr. Lashes dispute was inadequate to point it in the right direction. In fact, the evidence is to the contrary, it understood what the dispute was, but it absolutely should have contacted Mr. Lash before it verified that the nation star account was reporting accurately. It also could have contacted nation star in another type of communication method than this AC TV this automated impersonal, you know, electronic transit and nation star did ultimately admit in the course of this case that it reported in accurately. And that is evidence that is in the record. Can I ask you one last question and I know your time is up so I don't want to hold you over but just to help me get my bearing straight. We've been talking here about experience obligation after the dispute. And I, I tend to think about experience obligation post dispute obligation as a 1681 I reinvestigation obligation post dispute. Is there anything that remains of 1681 he is there any sort of like residual 1681 he obligation or now are we really just in 1681 I land and we should just kind of forget about 16. Thank you, Judge, I didn't prepare with cases to answer that question but I can answer that question just based on what I know from doing this type of work for a very long time. The 1681 EB requirement that experience, maintain reasonable procedures to assure maximum possible accuracy is not extinguished. When the consumer sends a dispute. And so as soon as experience on notice that this is a disputed trade line, and that it might be inaccurate. It's, it's obligation or 1681 EB remains to maintain reasonable procedures to assure the maximum accuracy of that trade line. So, so the obligation remains but does it add anything to the 1681 I obligation to conduct a reasonable reinvestigation or did the two just travel in parallel they're effectively co extensive. I, I don't want to misspeak, I have treated those and litigated those two questions as running in parallel being independent obligations. I mean that makes sense to me. Okay, that makes sense. Okay. Okay. I'm out of time if the court has any other questions for me I would be happy to continue talking. All right, thank you very much, Miss rockets and Mr weird thank you very much. My thanks to the court on behalf of my client. Mine to thank you, your honors.